773 So.2d 268 (2000)
STATE of Louisiana
v.
Paul CARTER.
No. 99-KA-0779.
Court of Appeal of Louisiana, Fourth Circuit.
November 15, 2000.
*272 Harry F. Connick, District Attorney of Orleans Parish, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY).
PLOTKIN, Judge.
This case presents the question of whether a non-weighable amount of heroin residue, discarded by defendant and found on defendant's person, is sufficient to support a conviction for possession of heroin and imposition of a life sentence in prison.

PROCEDURAL HISTORY
Defendant Paul Carter was charged by bill of information on January 14, 1998 with possession of heroin, a violation of La. R.S. 40:966(C)(1). Defendant pleaded not guilty at his January 20, 1998 arraignment. The trial court denied defendant's motion to suppress the statement and evidence on January 30, 1998. Defendant was tried by a jury composed of twelve persons on March 5, 1998, and found guilty as charged. The trial court adjudicated defendant a third felony habitual offender on June 4, 1998, and sentenced defendant to ten years at hard labor without benefit of parole, probation or suspension of sentence. The sentence was vacated on the same date on a motion to reconsider sentence filed by the State. On September 22, 1998, defendant was sentenced to life imprisonment without benefit of probation or suspension of sentence, with credit for time served. The trial court denied defendant's motion to reconsider sentence, and granted defendant's motion for appeal.

FACTS
New Orleans Police Officer Randy Lewis, who testified that he had made hundreds of narcotics arrests, stated that on November 13, 1997 he had been assigned to a multi-agency law enforcement task force focusing on narcotics activity and crimes involving firearms. He and eight other law enforcement officers went to investigate at the corner of Clio and South Liberty Streets after receiving a complaint that narcotics were being sold at that location. When Officer Lewis and his partner, Agent Veal, arrived at that location, Officer Lewis observed two men. He believed that a man was handing the defendant *273 money. When Officer Lewis exited his vehicle, the defendant turned around. Officer Lewis observed in defendant's hand a plastic bag containing several white objects and a piece of tin foil. Officer Lewis ordered the men to come to him. The individual with the currency placed it into his pocket and walked toward the officer, while defendant put the foil packet back into the plastic bag, balled up the bag in his hand, and played the innocent, wondering aloud why the police were on the scene. Officer Lewis ordered defendant to come to him, and as Officer Lewis stepped toward the defendant, defendant ran into the Melpomene Housing Development. A chase ensued. Officer Lewis radioed other officers in the area with a description of the defendant. Before the defendant was apprehended, Officer Lewis observed him throw down the plastic bag containing white substances and a foil packet. Officer Raymond Veit retrieved the plastic bag. Officer Lewis testified he observed a syringe and a bottle cap being removed from defendant's person after his apprehension by Officer Michael Montalbano.
New Orleans Police Officer Raymond Veit testified that he was approximately five feet behind defendant, chasing him, when defendant discarded a plastic bag. Officer Veit immediately stopped and retrieved the bag, which contained numerous pieces of white rock-like objects, which he believed to be crack cocaine, and a piece of tin foil containing white powder. Officer Veit identified the plastic bag in evidence as the one defendant had discarded and he had recovered, along with the contents therein.
New Orleans Police Officer Michael Montalbano testified that he and Officer Veit were walking through the Melpomene Housing Development when Officer Lewis radioed that he was chasing someone. The two officers joined in the chase. Officer Montalbano said defendant discarded a plastic bag before he apprehended him. Officer Montalbano testified that he apprehended the defendant and found a hypodermic needle and a bottle cap in defendant's coat pocket during a search of his person. Officer Montalbano advised defendant of his Miranda rights, then defendant stated that the objects in the plastic bag were in fact "bunk," meaning fake crack cocaine, and that he had a heroin habit. Officer Montalbano stated that when Officer Veit handed the plastic bag to him, it contained, in addition to the fake crack, a tin foil packet containing white powder.
At trial, New Orleans Police Officer William Giblin, a criminalist, was qualified by stipulation as an expert in the field of the examination and identification of controlled substances. He testified that residue in a bottle cap and a small amount of powder inside a piece of foil tested positive for heroin. Officer Giblin testified that the amounts were too insignificant to weigh. He also tested a syringe and white rock-like substances, but found no indication of controlled dangerous substances in these items.

ERRORS PATENT
A review of the record reveals two errors patent. First, the trial court denied defendant's motion for new trial on June 4, 1998, the same date as the habitual offender hearing wherein the trial court sentenced defendant to ten years at hard labor as a third-felony habitual offender, pursuant to State v. Dorthey, 623 So.2d 1276 (La.1993). La.C.Cr.P. art. 873 requires a twenty-four hour delay between the denial of a motion for new trial and sentencing, unless the defendant expressly waives such delay. In the instant case, upon motion by the State, the trial court vacated the ten-year sentence the same day it was imposed, but the court did not resentence defendant until September 22, 1998. Any error in originally imposing the habitual offender sentence on the same date as the denial of the motion for new trial did not prejudice defendant because the sentence was vacated. See State v. Bentley, 97-1552 (La.App. 4 Cir. 10/21/98), *274 728 So.2d 405, writ denied 98-3213 (La.5/7/99), 741 So.2d 27 (failure to observe twenty-four hour delay after denial of motion for new trial did not prejudice defendant where sentence later vacated and habitual offender sentence imposed).
Second, the trial court failed to stipulate that defendant's life sentence is to be served without benefit of parole; only probation or suspension of sentence. Defendant was sentenced as a third-felony habitual offender pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), which provides that the sentence be served without benefit of parole, probation or suspension of sentence. However, this court will not correct an error patent favorable to defendant where it is not raised by the State or by the defendant. State v. Thomas, 99-2219, p. 4 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, 1107; State v. Martin, 98-1507, p. 8 (La.App. 4 Cir. 4/5/00), ___ So.2d ___, ___, 2000 WL 528072.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant argues that the trial court erred in denying his motion to suppress the evidence. Specifically, defendant asserts that the officers did not have reasonable suspicion to make an imminent stop of the defendant.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 5 (La.7/2/99), 750 So.2d 893, 901, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La. App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194.
La.C.Cr.P. art. 215.1(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; State v. Mitchell, 98-1129, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. "The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop." State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the court may consider *275 the officer's past experience, training and common sense in determining if the officer's inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. "In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case." State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Officer Lewis testified at the motion to suppress hearing that the group of eight officers were in the Melpomene Housing Development area in four to six police cars. Three police cars, including two unmarked cars and the marked vehicle Officer Lewis was riding in, stopped at the dead-end of South Liberty Street, where defendant was standing. One of the unmarked police cars stopped next to the defendant. Officer Lewis testified at trial that he observed the defendant standing facing another individual. Officer Lewis stated that from his vehicle he observed that the other individual had currency in his hand. Officer Lewis believed the individual was preparing to hand the money to defendant. When Officer Lewis exited his vehicle and closed his door, defendant apparently was alerted to the officers' presence and turned around, revealing that he was holding a plastic bag containing white rock-like substances and a tin foil packet. Officer Lewis testified that after seeing the bag and its contents, he decided defendant was about to make a sale. Officer Lewis then ordered defendant and the other man to come over to him.
Defendant argues on appeal that the stop occurred at the point when the officers drove up en masse, and "intentionally surrounded and blocked all exits to the area." However, at the motion to suppress hearing, Officer Lewis denied defense counsel's suggestion that the officers had "sealed off that intersection." While it was a dead-end street, defendant was not in a vehicle and could have simply walked into the housing development. In fact, defendant did run into the development after Officer Lewis attempted to stop him. Although Officers Veit and Montalbano were approaching on foot through the housing development, and presumably would have come onto the scene, Officer Lewis testified that he and the other officers were not planning to stop anyone in particular. Rather, the officers were simply going to the area to investigate a complaint of drug activity. Officer Lewis testified that he did not make the decision to stop defendant until after he had exited his vehicle and defendant turned toward him holding a plastic bag with what appeared to be crack cocaine and a tin foil packet. The trial court as the trier of fact, was within its discretion to implicitly find that the decision to stop did not occur until defendant was observed holding contraband.
Defendant likens the instant case to a recent decision by the U.S. Supreme Court, Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), where the court rejected the argument that an anonymous tip, stating that a young black male wearing a plaid shirt was carrying a gun while standing at a bus stop, was sufficient to justify an investigatory stop of that person. The Miami-Dade police officers in Florida v. J.L. went to the bus stop intending to stop the particularly-described person, and immediately stopped that person solely on the basis of the tip, without observing any suspicious activity which would have justified the stop.
The only similarity between the facts in Florida v. J.L. and those in the instant case is that each case involved an anonymous tip-assuming the "complaint" in the instant case was anonymous. In the instant case, the officers went to a location to investigate a general complaint of drug activity. The officers later decided to stop defendant, only after they observed defendant *276 holding a plastic bag containing what the officers reasonably believed to be illegal narcotics, while in the company of another man holding currency.
Officer Lewis had reasonable suspicion to stop defendant at the time he ordered defendant to come over to him. Therefore, the contraband recovered after being discarded by defendant, as well as that found on his person after his arrest, was lawfully seized. It cannot be said that the trial court abused its discretion in denying defendant's motion to suppress the evidence.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant claims the evidence was insufficient to sustain his conviction.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
To support a conviction for possession of a controlled dangerous substance, the state must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. La. R.S. 40:966(C); State v. Ricard, 98-2278, p. 7 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397. Knowledge need not be proven as facts, but may be inferred from the circumstances. State v. Porter, 98-2280, p. 3 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162.
Defendant claims the evidence was insufficient to show that he knowingly possessed heroin. There is no dispute that *277 the only evidence of heroin was a very minute amount of the substance in a tin foil packet and heroin residue in a beer bottle cap found on defendant's person. Both amounts were too insignificant to be weighed. Defendant analogizes the circumstances of this case to those cases involving "crack pipes," where the issue is whether a defendant knowingly or intentionally possesses cocaine by virtue of his or her possession of a crack pipe, used for smoking crack cocaine, containing cocaine residue.
A trace amount of cocaine in a crack pipe, i.e., residue, can be sufficient to support a conviction for possession. See State v. Shields, 98-2283, p. 3 (La.App. 4 Cir. 9/15/99), 743 So.2d 282, 283; Porter, supra. However, the amount of the substance seized will have some bearing on the defendant's guilty knowledge or intent. State v. Monette, 99-1870, p. 5 (La.App. 4 Cir. 5/3/00), 758 So.2d 362, 365. With respect to crack pipe cases, "the peculiar nature of the pipe, commonly known as a `straight shooter' and used exclusively for smoking crack cocaine, is also indicative of guilty knowledge." State v. McKnight, 99-0997, p. 4 (La.App. 4 Cir. 5/10/99), 737 So.2d 218, 219; State v. Williams, 98-0806, p. 7 (La.App. 4 Cir. 1/19/00), 732 So.2d 105, 109, writ denied 99-1184 (La.10/1/99), 748 So.2d 433. In addition, recent drug use is also a factor evidencing guilty knowledge, as is flight or furtive behavior. See Monette, supra.
One of the circumstances most often cited as evidencing guilty knowledge in crack pipe cases-combined with the fact of possession of the pipe itself-is the presence of visible cocaine residue in the pipe. In State v. Tassin, 99-1692 (La.App. 4 Cir. 3/15/00), 758 So.2d 351, testimony by two police officers that there was visible cocaine residue in a crack pipe found in the defendant's purse was sufficient to show guilty knowledge. In State v. Lewis, 98-2575 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025, an arresting officer noticed what, based on his experience, he believed was cocaine residue in a crack pipe. This court held that "the presence of visible cocaine residue in the crack pipe found in defendant's front coat pocket is sufficient evidence to support the inference that defendant had the requisite intent to attempt to possess cocaine." Id. at p. 4, 755 S.2d at 1028. In State v. Drummer, 99-0858 (La. App. 4 Cir. 12/22/99), 750 So.2d 360, defendant's possession of two crack pipes containing visible cocaine residue was sufficient to establish guilty knowledge. In State v. Guillard, 98-0504 (La.App. 4 Cir. 4/7/99), 736 So.2d 273, the arresting officer testified that a crack pipe recovered from the defendant appeared to contain cocaine residue. This court stated: " Defendant's possession of a crack pipe with visible cocaine residue in it allows an inference that the defendant had the intent to attempt possess cocaine." 98-0504 at p. 6, 736 So.2d at 277. In two cases, the fact that arresting officers observed "white residue" in the crack pipes-without any testimony that the officers believed it was cocaine-was sufficient to prove the necessary guilty knowledge. See Shields, supra; Porter, supra.
In the instant case, defendant was found in possession of a "King Cobra" beer bottle cap, which undisputedly contained heroin residue, but which residue was not sufficient to be weighed. Officer Lewis, who was qualified by the court as an expert in drug paraphernalia, drug transactions and drug use, testified that bottle caps such as the one found on defendant were associated with heroin use. He explained that users heat the heroin in the bottle cap, then draw it up into a syringe. He also said the bottle caps are usually found with syringes; a syringe was found in defendant's coat pocket along with the bottle cap. Officer Lewis stated that heroin users commonly reuse the same bottle cap over and over, leaving a residue in the cap. Officer Lewis testified that defendant stated to the officers that he was selling the fake crack cocaine to obtain additional narcotics and that he was a heroin *278 user. He also testified that it was very common for individuals to sell cocaine and fake drugs to obtain money to purchase heroin. Officer Montalbano testified that defendant admitted he was selling the fake crack cocaine to support his heroin habit. He also testified that defendant had scarring or "track marks" on his arms and explained that if one injects heroin long enough, one eventually develops this type of scarring.
The evidence established that, as to the bottle cap alone, defendant was in possession of a piece of paraphernalia commonly used by heroin users to heat up heroin; that this process leaves a residue; and that this particular bottle cap had heroin residue in it, as evidenced by the testing. Additionally, the evidence established that defendant was a confessed heroin user who admitted to selling fake crack cocaine to obtain money to purchase heroin. Viewing this evidence and the evidence as a whole, in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant knowingly and intentionally possessed heroin by virtue of his possession of the bottle cap.
As for the heroin powder residue in the tin foil packet discarded by defendant during the chase, it was undisputed that the residue was heroin, as evidenced by criminalist Officer Giblin's test results. It was also undisputed that the amount was insufficient to be weighed. However, because defendant admitted to being a heroin user, it can be inferred that if defendant did not believe the packet contained heroin he would not have retained it. Viewing this evidence and the evidence as whole, in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant knowingly and intentionally possessed heroin by virtue of his possession of the tin foil packet.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
In this assignment of error, defendant argues that the provision of the Habitual Offender Law under which he was sentenced, La. R.S. 15:529.1 (A)(1)(b)(ii), is unconstitutional as applied to him, a "non-violent, drug addicted third offender."
La. R.S. 15:529.1(A)(1)(b) provides that a person convicted of a third felony such that upon a first conviction would be punishable by imprisonment for any term less than his natural life, shall be punished as follows:
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Here, defendant was convicted of possession of heroin, a violation of La. R.S. 40:966(C) which provides for imprisonment at hard labor for not less than four years nor more than ten years.
Defendant's argument is two-fold. He claims the statutory provision is unconstitutional because:
(1) the mandatory life sentence without benefit of probation or parole for [sic] punishes the status of being a drug addict and possessing drugs; and (2) there is no rational basis for subjecting a heroin addict with a non-violent criminal record to mandatory life imprisonment while subjecting a person addicted to another drug, i.e., cocaine, with the same criminal history to a sentence of not more than ten years."
Defendant's first argument appears to be that the sentence provided by the statute is unconstitutional under the cruel and *279 unusual punishment provisions of the Eighth Amendment to the U.S. Constitution and La. Const. art. 1, § 20. His second argument appears to be that the sentence provided by the statute is a violation of the equal protection clauses of the Fourteenth Amendment to the U.S. and Louisiana Constitutions.
Defendant's argument that La. R.S. 15:529.1(A)(1)(b)(ii) is cruel and unusual punishment as applied to him is premised on his repeated but erroneous assertion, as illustrated by the above quote from his brief on appeal, that the life sentence imposed on him was without the benefit of parole. As previously discussed, the trial court did not deny defendant the benefit of parole. Defendant could be paroled after serving twenty years of his sentence and having his life sentence commuted to a fixed term of years. See La. R.S. 15:574.4(A)(3). For that reason alone, defendant's argument fails. Moreover, under State v. Dorthey, supra, the trial court had the authority to sentence defendant to a sentence less than the statutory maximum if it felt the sentence was constitutionally excessive, i.e., cruel and unusual punishment. The trial court did in fact sentence defendant to ten years imprisonment, but after being informed by the State of defendant's prior criminal record, the court vacated that sentence and imposed the mandatory sentence under the Habitual Offender Law, but allowed defendant the benefit of parole.
Further, defendant is not being punished for his status as a drug addict. His sentence under the Habitual Offender Law is an enhancement of his sentence for possession of heroin because he has two prior felony convictions. Had defendant not been previously convicted of the two other non-drug felonies-simple escape and possession of stolen property valued at more than five hundred dollars-he would not have been subject to having his sentence for possession of heroin enhanced. There is no evidence that these other two felonies were related to defendant's status as a heroin addict. In fact, the presentence investigation report in the instant case reflects that defendant did not begin using drugs until he was twenty-two years old, which would have been after the two predicate convictions.
Defendant also claims that there is no rational basis for subjecting a third-felony habitual offender like him, whose third conviction is for possession of heroin, to a mandatory sentence of life imprisonment while another third-felony habitual offender with a third conviction for possession of cocaine would only be subject to a sentence of from forty months to ten years.[1]
Both the Fourteenth Amendment to the U.S. Constitution and La. Const. art. I, § 3 provide that all persons are entitled to equal protection of the law. These provisions mandate "that persons similarly situated receive like treatment." Whitnell v. Silverman, 95-0112, pp. 9-10 (La.12/6/96), 686 So.2d 23, 29-30. While claims may be subject to a different analysis under the federal and state guarantees, a minimal standard of review applies under both provisions where, as here, there is no fundamental right, suspect class, or enumerated characteristic alleged as the basis for discrimination.[2]Progressive Security Ins. Co. v. Foster, 97-2985, pp. 17-19 (La.4/23/98), 711 So.2d 675, 685-87. Under these standards, an individual *280 claiming an equal protection violation has the burden of establishing that a discriminatory classification "is not rationally related to any legitimate governmental interest" or that it "does not suitably further any appropriate state interest." Id.
The "Uniform Controlled Dangerous Substance Law," Louisiana's version of the Uniform Controlled Dangerous Substances Act-versions of which have been adopted by forty-nine states, as well as the Virgin Islands and Puerto Rico-classifies heroin as a Schedule I drug, while cocaine is classified as a Schedule II drug. La. R.S. 40:964. The record contains no evidence that the greater penalty for possession of heroin, and the habitual offender sentence for third-felony habitual offenders convicted of a drug offense punishable by imprisonment for more than five years, are not rationally related to any legitimate governmental interest, or that the statutes do not suitably further any appropriate state interest. Therefore, defendant has failed to meet his burden of proving that the statute is unconstitutional under the equal protection clauses of the U.S. and Louisiana constitutions.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant argues that the State presented insufficient evidence to establish that he was a third-felony habitual offender.
This court has held that a defendant's failure to object orally or in writing to a habitual offender information on the ground that the State failed to prove that he was the person previously convicted, precludes a defendant from raising the issue of sufficiency on appeal. State v. Washington, 98-0583, pp. 16-17 (La.App. 4 Cir. 11/17/99), 747 So.2d 1191, 1200. In the instant case, defense counsel did not object to the habitual offender information on any ground, either orally or in writing. Therefore, defendant cannot raise the sufficiency of the evidence as to his identity on appeal.
However, even assuming defendant had properly objected, the evidence was sufficient to prove defendant was the same person previously convicted. To prove a defendant is a habitual offender under La. R.S. 15:529.1, the State is required to establish the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Anderson, 99-1407, p. 6 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, 325. Proof of identity can be established through a number of ways, such as the testimony of witnesses to prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record. State v. Isaac, 98-0182, p. 7 (La.App. 4 Cir. 11/17/99), 762 So.2d 25, 28-29. It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can done through means such as a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc. See Anderson and Isaac, supra.
In the instant case, New Orleans Police Officer Lawrence James testified at the June 4, 1998 habitual offender hearing that he had taken defendant's fingerprints the previous day. He matched those fingerprints to fingerprints on the backs of two arrest registers, one reflecting a June 19, 1990 arrest for possession of a stolen automobile, the other reflecting an April 14, 1987 arrest for simple escape. The arrest register for the simple escape charge reflects an arrest of Paul Carter, with an address of 2300 Thalia Street, Apt. B, a date of birth of 10/27/68, and listing folder number 375665. A bill of information, dated June 12, 1987, in case number 320-586, charges Paul Carter, of 2300 Thalia Street, with simple escape on February 3, 1987, by failing to return from a scheduled work *281 detail, having been previously sentenced to the Department of Corrections. A plea of guilty form in case number 320-586 reflects that Paul Carter pleaded guilty to simple escape on June 17, 1987. A docket master in case number 320-586, folder number 375665, reflects that Paul Carter, date of birth 10/27/68, was charged by bill of information on June 12, 1987 with simple escape, and pleaded guilty to that offense on June 17, 1987. Finally, a minute entry in case number 320-586 reflects that Paul Carter pleaded guilty to simple escape on June 17, 1987. The defendant's name and address link the arrest register to the bill of information. The bill of information is in turn linked to all other documents by defendant's name and case number. The folder number also links the arrest register to the docket master. This evidence is sufficient to prove that defendant was one and the same Paul Carter convicted on June 17, 1987 of simple escape.
The June 19, 1990 arrest register for possession of a stolen automobile reflects an arrest of Paul Carter, address 2510 Thalia Street, Apt. B., date of birth, 10/27/68, folder number 486511. A bill of information reflects an indictment of Paul Carter for possession of a stolen automobile valued at more than five hundred dollars, an offense occurring on June 19, 1990, in case number 344-343. The record contains no copy of the reverse side of the bill of information, which would list the defendant's address. A docket master in case number 344-343, listing folder number 486511, reflects that Paul Carter, date of birth 10/27/68, was charged with possession of stolen property valued at over five hundred dollars, and that person was found guilty as charged on July 2, 1991. A minute entry in case number 344-343 reflects that Paul Carter was found guilty as charged on July 2, 1991 of violating La. R.S. 14:69-possession of stolen property. A habitual offender bill of information in the record charges that Paul Carter was found guilty as charged on July 2, 1991, in case number 344-343, of possession of stolen property valued at over five hundred dollars. This evidence is sufficient to prove that defendant was one and the same Paul Carter convicted on July 2, 1991 of possession of stolen property.
The evidence was sufficient to find that defendant was a third-felony habitual offender.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
In this last assignment of error, defendant claims his sentence is unconstitutionally excessive.
Defendant received the mandatory minimum sentence under La. R.S. 15:529.1(A)(1)(b)(ii), life imprisonment at hard labor. Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional, and thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906 at p. 11, 709 So.2d at *282 678. "[D]epartures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Johnson, 97-1906 at p. 9, 709 So.2d at 677.
In State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282, this court vacated the life sentence of a fourth felony habitual offender sentenced pursuant to La. R.S. 15:529.1(A)(1)(c)(ii)-essentially the same as the provision at issue in the instant case, except it applies to fourth felony offenses-after his conviction for distribution of one rock of crack cocaine. This court found that, on the facts pertaining to that defendant, it was "unable to conclude that this life sentence is not excessive under the constitutional standard." 97-1553 at p. 11, 723 So.2d at 1020.
The defendant in Burns was observed by police selling one rock of crack cocaine to a third person. When arrested, the defendant was in possession of two more rocks and fifty-seven dollars. Defendant testified at trial that he was addicted to cocaine. Noting that two of defendant's prior convictions were for possession of cocaine, this court concluded, "thus it is safe to assume he deals to support his habit," 97-1553 at p. 9, 723 So.2d at 1019. The defendant was twenty-five years old, and this court felt that the defendant was "young enough to be rehabilitated." Id. This court noted that a sentence less than life would "afford him the opportunity to partake in self-improvement classes while incarcerated and the possibility of a productive future." Id. The defendant's father testified at trial, stating that the defendant was well liked in the community and would go out of his way to help anyone. Though recognizing that the fact that none of the defendant's felonies were non-violent alone was insufficient to override the legislatively designated sentences of the Habitual Offender Law, this court cited Johnson, 97-1906, 709 So.2d 672, for the proposition that this fact should not be discounted. This court also noted that there were no allegations that the defendant ever possessed a dangerous weapon. Finally, the court noted that the defendant had difficulties with memory regarding time and place, attributing the problems to a previous gunshot wound to the head. The court found that this "surely must affect [the defendant's] ability to function in the same manner as someone who has not been shot in the head." Id. at p. 10, 723 So.2d at 1020. The court also cited two economic impact considerations-that the defendant would never be a productive taxpayer in prison, and that life imprisonment imposes an undue burden on taxpayers of the state who must feed, house and clothe the defendant for life, as well as provide geriatric care in later years.
In State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, writs denied, 99-1240, 99-1300 (La.10/8/99), 750 So.2d 179, 963, this court declined to extend Burns to a case where there was no evidence that the defendant was driven by his addiction to sell drugs to support his drug habit, and where the record was devoid of any testimony suggesting that the defendant might possess any redeeming virtues. This court stated:
Where a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
97-2060 at p. 13, 730 So.2d at 1027-28.
In State v. Long, 97-2434 (La.App.4th Cir. 8/26/99), 744 So.2d 143, writ denied, 99-2780 (La.3/17/00), 756 So.2d 1140, this court affirmed a mandatory life sentence imposed on a third-felony habitual offender convicted of distribution of marijuana and cocaine, who had prior convictions for distribution of false drugs and possession of cocaine. There was no evidence introduced at trial to indicate that the defendant *283 was addicted to drugs, as there had been in Burns, and the record revealed no testimony concerning any redeeming virtues the defendant might have possessed, as there had been in Burns. The court held that the defendant had failed to meet his burden of showing by clear and convincing evidence that his sentence was unconstitutionally excessive, as required by Johnson, supra.
More recently, in State v. Stevenson, 99-2824 (La.App. 4 Cir. 3/15/00), 757 So.2d 872, this court reversed the mandatory life sentence imposed upon a third-felony habitual offender, likening it to Burns. In Stevenson, the defendant was a thirty-eight year old mother convicted of distribution of one rock of crack cocaine, with prior convictions for felony theft and simple burglary of an inhabited dwelling. No drugs were found on her person after her arrest for distribution of the cocaine. This court noted that, like the defendant in Burns, the defendant in Stevenson had no record of violent crimes, nor was there any evidence she had ever used a dangerous weapon. This court conceded that, unlike in Burns, the defendant in Stevenson did not testify that she was a drug addict, and no one testified in her behalf. However, this court noted that the trial court had ordered the defendant to report to a substance program, and inferred the possibility that she, like the defendant in Burns, was a drag addict who sold the cocaine to support her own habit. This court concluded by stating:
In the case at bar, the life sentence imposed on this third offender may not be proportionate to the crime for which she was convicted, namely the selling of one rock of cocaine. Defendant does not have a violent history and does not appear to have significant ties to drug distributors. She may have been supporting a drug addiction with the transaction; she is fairly young, and she is a mother. It must be remembered that, if defendant does receive a life sentence, any hope for her rehabilitation will vanish, and "the taxpayers of the state [will have to] feed, house, and clothe [her] for life." State v. Hayes, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, 303. On the other hand, it cannot be forgotten that defendant has had two prior chances to prove herself capable of rehabilitation and has failed. She deserves severe, but constitutional, punishment.
On the record before us, we are unable to conclude either that defendant's mandatory life sentence is constitutional or that there is clear and convincing evidence to the contrary. Therefore, we vacate defendant's sentence and remand this case to the district court for a hearing at which defendant may present evidence that she is "exceptional ... a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223 (Plotkin, J., concurring). The district court must also consider whether, in light of the evidence presented by defendantand any countervailing evidence presented by the Statea mandatory life sentence, for this defendant, makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and/or is grossly out of proportion to the severity of her crime. Lobato, supra.[3] If defendant succeeds in carrying her burden, the district court, after carefully considering the evidence before it, shall use its great discretion to sentence her to the longest sentence that is not constitutionally excessive, i.e. to the maximum constitutional sentence. Randall, 741 So.2d at 860.[4] *284 Stevenson, 99-2824 at pp. 6-7, 757 So.2d at 875.
Thus, in Stevenson, this court found that the scant record evidence suggested that the mandatory life sentence might be unconstitutionally excessive, but because the evidence was insufficient to definitely resolve the issue, this court vacated the sentence and remanded the case to allow the defendant the opportunity to do what he had not done at the original habitual offender hearingprove by clear and convincing evidence that the mandatory minimum sentence under the Habitual Offender Law was unconstitutionally excessive as applied to him. This result takes Burns a step further, in that in Burns the ample record evidence apparently was sufficient to definitively resolve the issue of excessiveness.
In the instant case, the trial court initially sentenced defendant to ten years at hard labor under Dorthey, supra, but vacated the sentence that same day on motion of the State, which then produced evidence of the defendant's criminal history. Consequently, the trial court resentenced defendant to life imprisonment. In resentencing defendant, the trial court noted in detail defendant's juvenile record: 9/13/81-criminal trespass, probation; 9/26/81-theft and resisting an officer, one year probation; 4/4/82-simple damage to property and theft, pled guilty; 8/31/83-shoplifting, six months probation; 2/29/84-simple robbery and simple battery, six months probation; 4/16/84-shoplifting, six months probation; 4/2/85-shoplifting, one year Department of Corrections (DOC); 7/15/85-theft and possession of stolen property, six months DOC; 8/22/85-simple escape, fourteen months DOC. The trial court also noted defendant's adult record: 4/14/87-possession with intent to distribute PCP and marijuana, possession of stolen property, refused; simple escape, six months parish prison; 3/17/90-possession of stolen property valued between $100 and $500, two years parish prison, suspended except for thirty days; 3/17/90-battery on a police officer and carrying a concealed weapon, two years parish prison, suspended except for thirty days; aggravated battery, theft under $100, refused; 6/19/90-resisting an officer and flight from an officer, refused; possession of cocaine and possession of stolen automobile valued at over $500, three and one-half and seven and one-half years at hard labor, concurrent; 5/30/95-battery, no record found; 4/28/97-criminal trespass, no record found; 11/13/97-first degree murder during crime, refused; 11/13/97-instant offense, distributing false drugs, which charge was pending at the time of the presentence investigation.
Defendant admitted that he was a heroin addict, and reported to a probation and parole officer that he began using drugs at age twenty-two. Although defendant blames his life of crime on his drug addiction, as defendant's date of birth is October 27, 1968, his drug usage would have begun after all of his convictions as an adult, except for the one in the instant case.
The trial court stated for the record that he considered sentencing defendant to a term of imprisonment less than life. However, unlike the defendants in Burns and Stevenson, the defendant in the instant case, who was twenty-nine years old at the time of resentencing, has four prior convictions. He also has an extensive juvenile record. Furthermore, defendant offered no evidence on his own behalf, as to any redeeming qualities he possessed.
Under these circumstances, defendant has failed to present substantial evidence to clearly and convincingly show that the mandatory minimum life sentence under the Habitual Offender Law is unconstitutionally excessive as applied to him. The record does not provide a suggestion that the sentence is unconstitutionally excessive as applied to defendant.
There is no merit to this assignment of error.

*285 CONCLUSION

For the foregoing reasons, we affirm defendant's conviction and sentence.
AFFIRMED.
MURRAY, J., concurs in the result.
NOTES
[1] Because the maximum penalty under La. R.S. 40:967(C) for possession of a small amount of cocaine is five years, as opposed to ten years for the same amount of heroin, in the instant case had defendant been convicted of possession of that amount of cocaine instead of heroin, his maximum sentence under the Habitual Offender Law would have been ten years imprisonment, pursuant to La. R.S. 15:529.1(A)(1)(b)(i).
[2] Although defendant's liberty is at stake, this case does not involve a fundamental right, nor does it involve a suspect class or an enumerated characteristic-race, age, sex, etc. See Townley v. State, Dept. of Public Safety and Corrections, 99-0645 (La.App. 1 Cir. 5/12/00), 762 So.2d 154.
[3] State v. Lobato, 603 So.2d 739 (1992).
[4] State v. Randall, 98-1763 (La.App. 3 Cir. 6/9/99), 741 So.2d 852, writ granted, 99-2476 (La.2/11/00), 754 So.2d 245.