723 So.2d 1013 (1998)
STATE of Louisiana
v.
Donlyn J. BURNS.
No. 97-KA-1553
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1998.
*1015 Harry F. Connick, District Attorney of Orleans Parish, Joseph E. Lucore, Assistant District Attorney of Orleans Parish, New Orleans, LA, for State.
Gregory K. Voigt, New Orleans, LA, for the Defendant-Appellant.
Court composed of Judge DENIS A. BARRY and Judge STEVEN R. PLOTKIN and Judge MOON LANDRIEU.
PLOTKIN, Judge.
This case raises the significant issue of whether a mandatory life sentence without benefits is constitutionally excessive when applied to a defendant who has four nonviolent and minor felonies. We hold that under these circumstances the trial judge is required to determine if there exist grounds for finding the sentence constitutionally excessive, thus requiring a deviation from the mandatory life sentence.
Defendant was charged by bill of information on August 22, 1996, with two counts; distribution of cocaine and possession with the intent to distribute cocaine, violations of La. R.S. 40:967(B)(1). He was arraigned on August 28, 1996, and tendered pleas of not guilty as to each count. Following a sanity hearing on December 29, 1996, the court found defendant competent to proceed to trial. On February 3, 1997, a jury found defendant guilty as charged. The State filed a multiple bill, and the multiple bill hearing was held on April 7, 1997. Defendant was found to be a quadruple offender and was sentenced, as to count one, under the provisions of La. R.S. 15:529.1, to serve life imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence; as to count two, he was sentenced to serve fifteen years at hard labor, to run concurrently with the sentence imposed on count one. It is from these convictions and sentences that defendant appeals.

STATEMENT OF FACTS:
On July 24, 1996, Officers Mark Delpit and Kevin Hunt were assigned to the Fifth District Task Force which targets known locations involving high narcotic activity and drug trafficking. At the time of defendant's arrest, Officers Hunt and Delpit were working in uniform and in a marked police unit. They were working a proactive patrol near the intersection of Caffin and North Galvez Streets at about 9:30 p.m. They stopped for a red light and observed the defendant, seated on a bicycle, engaged in conversation with a female. Both subjects seemed to be concentrating on an object in defendant's left hand. The female reached into her tee shirt pocket *1016 and retrieved an unknown amount of currency. She then handed the currency to defendant. He retrieved the currency with his right hand and at the same time reached into his left hand, removed an object, handed it to the female, and put the money that he had received into his pocket. Once the officers observed what they believed to be a narcotics transaction, they turned the corner against traffic and exited the vehicle. Defendant observed the police vehicle while riding off on his bicycle. Officer Hunt called to him, and told him to stop and get off the bike. Defendant complied. While laying the bike down on the ground, he discarded two white rocklike objects, which Officer Hunt believed to be crack cocaine. At the time, defendant was approximately five feet away from Officer Hunt, and there was street lighting at the intersection. He immediately grabbed defendant by the waistband and escorted him to the police vehicle. At the same time, he reached down and recovered the two objects. Officer Hunt placed handcuffs on defendant and advised him of his rights. The search incidental to defendant's arrest yielded $57.00 in various denominations in his pants pocket.
Officer Delpit focused his attention on the female. As she was walking away, he called to her. She finally stopped, and when she turned around, she dropped the object that she received from defendant. Officer Delpit observed her drop it. He stopped her and recovered the object. It was a small rocklike substance, which from his experience appeared to be crack cocaine. He then escorted her back to the police unit. He arrested the female and recovered $9.00 in currency from her shirt pocket. The three rock-like substances all tested positive for cocaine.
Defendant's father testified that to his knowledge his son did not sell drugs. Although defendant had prior convictions for possession of crack cocaine and possession of a stolen automobile, he believed that his son had the reputation in the community of being a good person.
The defendant took the stand on his own behalf. He admitted to having two prior convictions, one for possession of a stolen automobile and one for possession of cocaine. He further admitted that he was guilty of those two crimes. Defendant testified that on the night of his arrest he was coming up the street on his bike, and the police were coming from the opposite direction. A girl called him, and he went over to her. The police car came around the corner; the girl walked away, and the police called to her. One officer grabbed him, took him off his bike, and threw him to the ground. The other officer got the girl. The officers told them that they were under arrest. Defendant denied selling drugs that night. He explained that he had been shot in the head, and he gets money every month from disability. He had gone out to buy drugs, but had not bought any yet. Defendant actually has three prior convictions: one for possession of stolen property and two for possession of cocaine.

ERRORS PATENT:
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR 1:
In his first assignment of error, defendant maintains that he was denied effective assistance of counsel at the multiple bill hearing.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir. 1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La. 1984). The defendant must show that counsel's *1017 performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
Defendant argues that defense counsel failed to file a written answer or a motion to quash the habitual offender bill of information. He maintains that as a result of counsel's omission, no issues are preserved on appeal concerning the habitual offender proceedings. He further alleges that counsel's performance during the habitual offender proceedings was deficient. Defense counsel accepted the State's stipulation as to Officer James' qualifications without any cross-examination concerning the officer's training, experience, or qualification as an expert in other cases or sections of court.
Defendant fails to establish what, if anything, an answer or a motion to quash would have accomplished. The allegation that defendant was a multiple offender was supported by the certified documents filed by the State. Defendant failed to show that any issues existed that could have been preserved or that he has been prejudiced.
Defendant also challenges counsel's decision to accept the stipulation that Officer James was an expert in the analysis of fingerprints. However, defendant fails to show any prejudice.
Defendant's final complaint regarding his representation was that it was his attorney who forced the fingerprint expert to explain why he concluded that defendant was the same person who had been previously convicted. This was proper cross-examination. Given that the expert had concluded that defendant had several prior convictions, counsel would have been remiss had he not inquired or challenged that conclusion. The only way to challenge that conclusion was to explore how it was reached. Counsel did that in hopes of exposing an error or discrediting the witness. In light of the evidence presented, counsel's failed attempt to convince the trial court that defendant did not have prior convictions did not result because counsel was ineffective, but rather resulted because sufficient evidence was presented by the State.
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
This assignment has no merit.

ASSIGNMENT OF ERROR 2:
In his second assignment of error, defendant asserts that the district court failed to adequately comply with the provisions of La. C.Cr.P. art. 894.1 and also imposed an unconstitutionally excessive sentence. Because of his two prior convictions for possession of cocaine and possession of stolen property, defendant was sentenced as a quadruple offender to serve life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The sentence for a fourth offender under the provisions of La. R.S. 15:529.1(A)(1)(c)(ii) is imprisonment for life without the benefit of parole, probation, or suspension of sentence where, as here, at least one of the convictions is for a violation *1018 of the Uniform Controlled Dangerous Substances Law.
A sentence may be reviewed for constitutional excessiveness even though it is within statutory guidelines. State v. Cann, 471 So.2d 701, 703 (La.1985). In reviewing a sentence for excessiveness, the appellate court must first determine whether the trial court complied with La.C.Cr.P. art. 894.1 when it imposed the sentence and then determine whether the sentence is too severe given the circumstances of the case and the defendant's background. State v. Lobato, 603 So.2d 739, 751 (La.1992). If the sentence needlessly imposes pain and suffering and is grossly out of proportion to the gravity of the offense so as to shock our sense of justice, then it may be determined to be unconstitutionally excessive as violative of La. Const. art. 1, Sec. 20 (1974). Id. However, a sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id. The articulation of the factual basis for a sentence is the goal of LSA C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even when there has not been full compliance with LSA C.Cr.P. art. 894.1. Id.
Defendant asserts that no oral reasons were given for the sentence imposed, a violation of La.C.Cr.P. art. 894.1(C). The State counters that because the sentencing occurred immediately after the multiple bill hearing during which defendant's three prior felony convictions were discussed, the court was familiar with defendant's criminal history at the time of sentencing.[1] During sentencing the trial court stated that defendant was a quadruple offender, mandating a sentence of life imprisonment without benefit of parole, probation or suspension of sentence under La. R.S. 15:529.1(A)(1)(c)(ii):
... Mr. Burns, under 15:529.1, Paragraph (A)(2), subparagraph 2, subparagraph A, subparagraph C(ii) [sic]: any fourth or subsequent felony offender or any prior felonies as a felony is a violation of the uniform control dangerous substance law, punishment by imprisonment for more than 5 years, then the person shall be imprisoned for the remainder of his natural life without benefit of probation, parole, or suspension of sentence.
In this case, sir, you were convicted of distribution of cocaine, crack cocaine. Distribution of cocaine carries a possible sentence of 5 to 30 years.
So, therefore, sir, you do fit that paragraph, and I sentence you to serve the rest of your natural life without benefit of probation, parole, or suspension of sentence. I'll note your objection for the record.
The purpose behind La.C.Cr.P. art. 894.1 is to provide an explanation for a particularized sentence when the trial court is given discretion to choose a sentence tailored to the offender's circumstances from within a legislatively provided sentencing range. Here, the trial court did comply with La. C.Cr.P. art. 894.1. He informed defendant that he was sentencing him under 15:529.1 as a fourth felony offender, with at least one conviction arising under the Uniform Controlled Dangerous Substances Law, to the mandatory life sentence. Because the trial court did not have to choose a sentence from within a given range, this recitation of the reasons why defendant was being sentenced to life imprisonment, namely that it was statutorily mandated, was adequate compliance with La.C.Cr.P. art. 894.1.
However, defendant also argues that under State v. Dorthey, 623 So.2d 1276 (La.1993), the mandatory life sentence should be deemed excessive considering the circumstances of the offense.
As noted above, under La. R.S. 15:529.1(A)(1)(c)(ii), defendant was subject to a mandatory life sentence as a fourth offender convicted of distribution of cocaine. The penalties provided by La. R.S. 15:529.1 are not unconstitutional on their face. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. The trial court has the authority to reduce *1019 the mandatory minimum sentence provided by the statute for a particular offense and offender when such a term would violate the defendant's constitutional protection against excessive punishment. Id. Because the minimum sentence is presumed constitutional, a trial court, in considering whether the minimum sentence for a particular crime would be unconstitutional if applied to a particular defendant, may do so only if there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677.
Furthermore, our supreme court recently elaborated on the particularities the defendant must demonstrate to be entitled to a deviation from the mandatory sentences of La. R.S. 15:529.1. Id. at 676-677. The court sought to make intelligible the holding of State v. Dorthey, supra, and to make it understood that a downward departure from the mandatory sentences of La. R.S. 15:529.1 is only available in truly rare situations and cannot be premised solely on the nonviolent nature of the current or prior offenses. Rather, the defendant must be atypical in that the legislature did not meaningfully circumscribe a proper sentence tailored to accommodate the circumstances of the particular case. In Johnson, the supreme court did not believe that the mandatory minimum sentence of twenty years for a defendant whose current offense was possession of cocaine residue in a crack pipe and whose prior convictions were all nonviolent felonies was excessive.
Here, defendant has much more at stake than did the defendant in Johnson. In this case, the defendant will spend the rest of his life in jail because of the mandatory life sentence imposed. Whenever a defendant is faced with a mandatory life sentence as a multiple offender, heightened scrutiny is triggered when determining if defendant falls within those "rare" circumstances where a downward departure is warranted. See generally, State v. Hayes, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, 1022 (wherein the court found that the failure to object to a life sentence constituted an egregious case of ineffective assistance of counsel, warranting the sentence to be vacated).
In the instant situation, defendant was in possession of two rocks of crack cocaine, fifty-seven dollars, and had sold one rock of crack cocaine seconds before his arrest. He is a petty street drug pusher, selling only minimal amounts; he is not a "major drug dealer." State v. Winters, 612 So.2d 259, 261 (La.App. 4 Cir.1992). At trial, defendant freely admitted that he is addicted to cocaine, thus it is safe to assume he deals to support his habit, all the while lining the pockets of the major, despicable, and all too often, untouchable drug dealers. Two of his prior convictions were for possession of cocaine, which lends strength to the argument that this is a case of a drug-addicted young man and not a hardened and violent criminal.
Defendant is only twenty-five years old. Our jurisprudence believes that age is a factor to be considered when the statutes impose such harsh penalties. State v. Taylor, 96-1843 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 773; State v. Hayes, 712 So.2d at 1022. While the State argues that defendant's accumulation of four felonies by the tender age of twenty-five exemplifies his criminal propensities and complete lack of respect for law and order, we believe he is young enough to be rehabilitated. He indeed deserves serious punishment, including imprisonment, but a sentence less than life would afford him the opportunity to partake in self-improvement classes while incarcerated and the possibility of a productive future. He is also young enough to overcome his addiction to cocaine, the root of his criminal problems.
Defendant's father testified at trial on his son's behalf, stating that he is well liked in the community and would go out of his way to help others. The caselaw establishes that family background is another factor to be considered when deciding if a sentence is unconstitutionally excessive. State v. Lee, 96-2392 (La.App. 4 Cir. 8/13/97), 699 So.2d 461, 466; citing, State v. Compton, 96-2176 (La.App. 4 Cir. 10/23/96), 683 So.2d 853, 854. Such support cannot be overlooked at sentencing. A tragic but growing trend in this country is children being raised without the love, support and presence of their fathers. Here is a situation where a young man has *1020 the support of his father, which can make a difference in his prospects for rehabilitation.
The supreme court in Johnson, supra, made clear that the fact that defendant's felonies are non-violent alone is not sufficient to override the legislatively designed sentences of the Habitual Offender Law. Johnson, 709 So.2d at 676. But, it did note that, "the classification of a defendant's instant or prior offenses as non-violent should not be discounted ..." Id. Defendant's four felonies have all been non-violent. There is also no allegations in the record that defendant ever possessed a dangerous weapon. This is another mitigating factor this Court must consider.
This particular defendant also has difficulties with memory regarding time and place. This is noted in the report issued by the sanity commission and is attributed to a gunshot wound to the head sustained by defendant several years ago. It can be assumed that defendant's diminished brain functions may not rise to the level of rendering him incompetent to stand trial, but it surely must affect his ability to function in the same manner as someone who has not been shot in the head.
The supreme court in Johnson notes that drug abuse is not a victimless crime. In fact, the court painstakingly argues in dicta that a drug user "not [only effects] the user, but society in general through higher medical costs, higher unemployment rates, loss of tax revenue from those unemployed, etc. Other losses to society include theft or theft related crimes committed to support the drug habit." Johnson, 709 So.2d at 678. But it must not be forgotten that incarceration for life has equivalent effects. Defendant, as a lifetime prisoner, will receive wholly state-funded medical benefits. The supreme court's concern for lost tax revenue because of defendant's unemployment due to drug addiction will not be effected in any manner, except that life imprisonment will guarantee that he will never be a productive taxpayer. Furthermore, imprisonment for life has significant monetary effects inapposite to those expressed by the supreme court: "[L]ife imprisonment imposes an undue burden on the taxpayers of the state who must feed, house, and clothe this defendant for life." State v. Hayes, 712 So.2d at 1022. As defendant ages, these costs will only increase due to the need for geriatric health treatments.
In view of the underlying facts of this case, we are unable to conclude that this life sentence is not excessive under the constitutional standard. We therefore affirm defendant's conviction and habitual offender adjudication, vacate the sentence and remand for resentencing in accordance with the views expressed herein.
CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
BARRY, J., dissents with reasons.
BARRY, J., dissenting with reasons.
I strongly disagree that the mandatory life sentence given this defendant is constitutionally excessive.
Defendant is a four-time felony offender. The majority refers to his three prior convictions as "minor." All three convictions, two for possession of cocaine and one for possession of stolen property, are serious enough to be classified as felonies. The legislature determined that a three or four-time felon with at least one conviction for violation of the substance abuse law must be sentenced to life. The obvious rationale is to keep drug pushers off the streets. The mandatory life sentence is tailor made for this defendant, a cocaine user/dealer who has committed other crimes to support his habit.
The majority relies on State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, wherein the supreme court agreed with this court and reversed the trial court and imposed the mandatory minimum sentence of twenty years for possession of cocaine and marijuana. Johnson had prior felony convictions for possession of stolen property and theft. The predicate offenses did not involve drug charges.
The reasons given by the majority to reject this defendant's mandatory life sentence are refuted in Johnson. For instance, the majority stresses that this defendant was *1021 caught selling "only minimal amounts" of cocaine; whereas, in Johnson the court stresses that the amount of cocaine in defendant's possession (whether a full crack pipe or residue) is immaterial. Id. at 677-678.
The majority also reasons that defendant is young enough to be rehabilitated. In response to a similar argument, in Johnson the court said that although "rehabilitation is one goal of sentencing, deterrence and punishment are also goals, especially with repeat offenders." Id. at 678. The life sentence in this case serves the legislative intent of deterrence and punishment.
Finally, the majority suggests that life imprisonment has significant monetary effects upon society which are as great or greater than those of drug addiction. However, it is the province of the legislature to consider the effects on society when passing legislation. The legislature specified that a repeat violator of the substance abuse law, such as this defendant, should be locked up for life.
I respectfully dissent from vacating the defendant's life sentence.
NOTES
[1] The State's contention that the court was apprised of defendant's prior felonies at the multiple bill hearing is not accurate.