803 So.2d 102 (2001)
STATE of Louisiana
v.
Wesley WILSON.
No. 2000-KA-1736.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2001.
Rehearing Denied January 18, 2002.
*104 Harry F. Connick, District Attorney, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, La, Counsel for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge DENNIS R. BAGNERIS, Sr.
ARMSTRONG, Judge.

STATEMENT OF THE CASE:
The defendant, Wesley Johnson, was charged by bill of information with distribution of cocaine, La. R.S. 40:967(B), and possession of cocaine with intent to distribute, two counts to which he pled not guilty. A co-defendant, Emile Cola, was named on the second count. On May 19, 1999, the case went to trial with the defendant before a jury, and the co-defendant went to trial before the bench. A twelve member jury found the defendant guilty as charged. The judge found the co-defendant guilty of attempted possession of cocaine and immediately sentenced him to time served. On August 4, 1999, pursuant to a multiple bill filed by the State, the trial court found the defendant to be a third offender and sentenced him to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on each count with the sentences to be served concurrently. On appeal, the defense counsel assigns one assignment of error. The defendant, in his pro se brief, raises eight assignments of error.

FACTS:
On March 26, 1998, at approximately 3:00 p.m., Officer Tommy Mercadel was working in an undercover capacity when he passed the corner of Saint Anthony and Derbigny Streets. The co-defendant *105 flagged him down. Mercadel asked for a twenty. The co-defendant walked over to the defendant, returned to Mercadel, took a marked twenty dollar bill from him, exchanged something with the defendant, returned to Mercadel, and gave him a rock of cocaine. Mercadel's car was equipped with a radio transmitter, and Mercadel broadcast a description of the defendant and co-defendant. Mercadel said although the car had video equipment, he did not vidoetape the transaction. He identified pictures of the defendant and co-defendant taken immediately after the transaction and arrest.
Officer Clarence Gillard followed Mercadel and observed the transaction from a distance. He saw the co-defendant give the money to defendant after Mercadel drove away. He also gave a description of the defendant and the co-defendant to the take down unit. He identified the men in the photographs.
Take down officers moved in. The co-defendant was at the time leaning into a car occupied by Ashante Wright and a baby. After the defendant and the co-defendant were detained, the defendant was found to be in possession of the marked bill. After he was arrested and advised of his rights, officers took him to an alley and had him lower his pants. They could see a clear plastic bag hidden under his testicles. Officer Dwight Rousseve reached in and took the bag which contained seven pieces of crack cocaine.
Nothing was seized from the co-defendant.
Ashante Wright said she was the defendant's girlfriend. She did not know the co-defendant. On the day in question, she and the defendant went to St. Anthony's Store to buy diapers for the child. Outside the store, the co-defendant passed them and asked for change for a twenty dollar bill. He gave her the twenty dollar bill, but before she could give him change, the police rushed in, took the bill out of her pocket, and arrested the men. She said that officers threatened her the day of the trial.
Tameki Harrell said she heard the officers threaten Wright.

ERRORS PATENT:
A review of the record reveals one error patent. Under State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), multiple counts arising out of a single criminal act or episode cannot each be enhanced under the multiple offender statute. See also State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562. In the instant case, the offenses arose out of a single transaction. The district attorney multiple billed the defendant on both counts, and the trial court erroneously enhanced both sentences. The case thus must be remanded for re-sentencing.

ASSIGNMENT OF ERROR:
The defendant argues that the mandatory life sentence was excessive. The defendant cites State v. Burns, 97-1553 (La. App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282, and State v. Stevenson, 99-2824 (La. App. 4 Cir. 3/15/00), 757 So.2d 872, where multiple offenders' life sentence were vacated and argues that his case is similar.
The defendant recognizes that his sentence is the mandated term under La. R.S. 15:529.1(A)(1)(b)(ii). However, he argues that in this instance the imposition of the minimum sentence is excessive. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable *106 goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
The minimum sentences imposed on multiple offenders by the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional. State v. Short, 96-2780 (La.App. 4 Cir. 11/18/98), 725 So.2d 23. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
In Burns, the defendant's life sentence as a fourth felony offender was vacated because this Court was unable to conclude that the life sentence was not constitutionally excessive as applied to that particular defendant. The defendant in Burns was convicted of the underlying offense of distributing a single rock of crack cocaine. He had two prior convictions for possession of cocaine and one conviction for possession of stolen property. At trial, Burns testified that he was addicted to cocaine. This Court found that, based on the evidence in the record, Burns was driven by his cocaine addiction to sell drugs to support his habit, and it considered Burns' age of twenty-five, his family background, his drug addiction, the fact that all of the felonies were non-violent and the fact that there was no evidence he had ever possessed a dangerous weapon. After considering all of the circumstances of the case, this Court vacated the life sentence, reasoning, "[W]e are unable to conclude that this life sentence is not excessive under the constitutional standard. We therefore affirm defendant's conviction and habitual offender adjudication, vacate the sentence and remand for resentencing in accordance with the views expressed herein." Burns, 97-1553, p. 11, 723 So.2d at 1020.
In Stevenson, this court stated:
This case is similar to Burns in that the underlying offense was the sale of one rock of cocaine. When she was arrested, no drugs were found on her. Her other two offenses were a felony theft in 1985 and a simple burglary of an inhabited dwelling in 1987. Like the defendant in Burns, defendant has not committed any violent crimes; and there is no evidence that she has ever used a dangerous weapon. Unlike Burns, however, defendant did not testify at trial, nor did anyone testify on her behalf. Consequently, we know only that she is thirty-eight years old and a mother. Although there was no direct testimony as to her use of drugs at her trial or sentencing, the trial court ordered her to report to a substance abuse program. It is possible, then, that defendant is an addict like Burns who sold the rock to support her own habit.
In State v. Randall, 98-1763 (La. App.3 Cir.6/9/99), 741 So.2d 852, writ granted, 99-2476 (La.2/11/00), 754 So.2d 245, the court vacated the life sentence of a third felony offender after finding it excessive as applied to a twenty-nine year old convicted of simple robbery twice and illegal possession of stolen goods. The court stated:
While defendant unquestionably deserves imprisonment, a life sentence without benefit of parole, probation or suspension of sentence, would defeat any rehabilitative goal of our penal system; and in this rare instance, it is *107 fundamentally excessive. The United States Supreme Court has declared [that] the Eighth Amendment to the United States Constitution bars excessive punishment, i.e., punishment that "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). The Eighth Amendment bar also applies to punishment imposed by state courts. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court invalidated a prison sentence on the ground that it was too severe in relation to the crime defendant committed, stating:
In sum, we hold as a matter of principal that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional. As the court noted in Robinson v. California, 370 U.S. at 667, 82 S.Ct. at 1420, a single day in prison may be unconstitutional in some circumstances.
463 U.S. at 290, 103 S.Ct. at 3009 (footnote omitted).
Legislatively mandated minimum sentences, as well as those imposed by trial courts within a statutory range, do not automatically meet constitutional muster. We must review all sentences for constitutionally prohibited excessiveness. A life sentence forever closes the door of hope that this young defendant might one day learn from his past mistakes and ready himself to become a productive participant in our society. See, State v. Burns, supra. This State's, as well as the United States Constitution, prevents us from affirming such sentences, even if legislatively ordered, based on this record.
98-1763 at 11-12, 741 So.2d at 859.
In the case at bar, the life sentence imposed on this third offender may not be proportionate to the crime for which she was convicted, namely the selling of one rock of cocaine. Defendant does not have a violent history and does not appear to have significant ties to drug distributors. She may have been supporting a drug addiction with the transaction; she is fairly young, and she is a mother. It must be remembered that, if defendant does receive a life sentence, any hope for her rehabilitation will vanish, and "the taxpayers of the state [will have to] feed, house, and clothe [her] for life." State v. Hayes, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, 303. On the other hand, it cannot be forgotten that defendant has had two prior chances to prove herself capable of rehabilitation and has failed. She deserves severe, but constitutional, punishment.
On the record before us, we are unable to conclude either that defendant's mandatory life sentence is constitutional or that there is clear and convincing evidence to the contrary. Therefore, we vacate defendant's sentence and remand this case to the district court for a hearing at which defendant may present evidence that she is "exceptional ... a victim of the legislature's failure to assign sentences that are meaningfully tailored *108 to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223 (Plotkin, J., concurring). The district court must also consider whether, in light of the evidence presented by defendantand any countervailing evidence presented by the Statea mandatory life sentence, for this defendant, makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and/or is grossly out of proportion to the severity of her crime. Lobato, supra. If defendant succeeds in carrying her burden, the district court, after carefully considering the evidence before it, shall use its great discretion to sentence her to the longest sentence that is not constitutionally excessive, i.e. to the maximum constitutional sentence. Randall, 741 So.2d at 860.
99-2824, p. 4-7, 757 So.2d 872, 874-876.
In this case, the defendant was thirty-one years old, seven years younger than the defendant in Stevenson. His prior convictions were for possession of stolen property over $500.00 in 1990, and possession of cocaine in 1994. He was also convicted of possession of stolen property. Like the defendants in Stevenson and Burns the defendant's prior convictions were for non-violent crimes and there was no evidence presented that he used a dangerous weapon. There was no evidence introduced at trial or sentencing to indicate that he was addicted to drugs. Furthermore, as in Stevenson the defendant did not testify at trial or sentencing and no one testified on his behalf. This Court in Stevenson might well have been discussing the defendant in the present case when it reasoned:
Defendant does not have a violent history and does not appear to have significant ties to drug distributors. She may have been supporting a drug addiction with the transaction; she is fairly young, and she is a mother. It must be remembered that, if defendant does receive a life sentence, any hope for her rehabilitation will vanish, and "the taxpayers of the state [will have to] feed, house, and clothe [her] for life." State v. Hayes, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, 303. On the other hand, it cannot be forgotten that defendant has had two prior chances to prove herself capable of rehabilitation and has failed. She deserves severe, but constitutional, punishment.
On the record before us, we are unable to conclude either that defendant's mandatory life sentence is constitutional or that there is clear and convincing evidence to the contrary.
Accordingly, we find that the defendant's sentence should be vacated and the case remanded to the district court for a hearing at which the defendant may present evidence that he is "exceptional ... a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223 (Plotkin, J., concurring).

PRO SE ASSIGNMENT OF ERROR ONE:
The defendant argues his trial should have been severed from that of the co-defendant. There was no motion to sever made, so the trial court did not err in refusing to grant such a motion. However, the defendant seems to suggest that *109 counsel was ineffective in failing to move for a severance, even though the defendant does not directly put that issue before the court.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987).
The mere fact that both defendants were implicated in the cocaine crimes and tried together does not result in the creation of a conflict of interest. In fact, La.C.Cr.P. art. 704 provides that jointly indicted defendants shall be tried jointly unless the state elects to try them separately or the court, on motion of the defendant, after contradictory hearing with the district attorney, is satisfied that justice requires a severance. This article evidences a preference for jointly tried defendants to be tried together, unless a showing is made that justice would be better served by trying the defendants separately. The conflict cases cited by the defendant involved situations of joint representation, i.e. cases wherein defendants with antagonistic defenses were represented by the same counsel. The possibility of conflict is readily apparent in such cases. When the issue of conflict of interest is raised after trial, the defendant must establish that an actual conflict of interest adversely affected his attorney's performance. State v. Wille, 595 So.2d 1149, *110 1153 (La.1992). In State v. Kahey, 436 So.2d 475, 484-485 (La.1983), the Louisiana Supreme Court accepted the definition of an actual conflict of interest as set out in Zuck v. State of Ala., 588 F.2d 436, 439 (5th Cir.1979):
If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant is sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.
The defendant has not articulated any facts that suggest his attorney owed a duty to any party involved in this case other than the defendant. There is no claim of a personal conflict. The defendants were represented by different counsel. The suggestion of a conflict because both defendants were implicated in the drug transaction has no merit.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR TWO:
The defendant argues the trial court erred when it refused to order the State to produce the audio and videotapes.
There was no videotape in this case. The defendant makes no showing of how he was prejudiced by the State choosing not to produce the audio tape or to play it for the jury.
This assignment is without merit.

PRO SE ASSIGNMENTS OF ERROR THREE AND FOUR:
The defendant argues the prosecutor misled jurors during voir dire and in opening argument because he said that issues concerning the credibility of the witnesses could be discussed in conjunction with the standard for reasonable doubt and because he said that there was a "division of labor" in the drug dealing business.
There were no objections on this point made at trial, and the defendant is prevented from making the arguments for the first time on appeal. La.C.Cr.P. art. 841. Furthermore, nothing prevents a prosecutor from discussing reasonable doubt in tandem with the credibility of the witnesses. They are in fact interrelated topics.
These assignments are without merit.

PRO SE ASSIGNMENT OF ERROR FIVE:
The defendant argues that the prosecutor made improper statements during closing argument. He seems to suggest that the State argued that its witnesses had been determined to be credible. No objection was made on these grounds at trial. La.C.Cr.P. art. 841. Furthermore, the statement, if made, was proper argument.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR SIX:
The defendant argues the jury instruction was improper under Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In Cage, the U.S. Supreme Court held that a particular reasonable doubt instruction could have been improperly interpreted by a reasonable juror as allowing a finding of guilt based on a degree of proof below that required by the Due Process Clause. The Cage instruction informed the jurors that the doubt "must be such a doubt as would give rise to a grave uncertainty ...," that such a doubt "is an actual substantial doubt," and that what was required was "a moral certainty." 498 U.S. at 40, 111 S.Ct. at 329. The instruction in the instant case *111 did not contain any of the incorrect language.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR SEVEN:
The defendant argues he should not have been found to be a third offender.
At the multiple bill hearing, a fingerprint expert testified that the defendant's fingerprints taken the morning of the hearing matched the fingerprints on the back of the arrest registers in the two prior convictions, both of which were guilty pleas. Defense counsel's only objection, and thus the only issue that the defendant can argue on appeal, La. R.S. 15:529.1(D)(1)(b), was that the fingerprints on the back of the arrest registers were adequate to prove that the defendant had been arrested for the earlier crimes, but not that he had been convicted of them.
La. R.S. 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. The State must establish the prior felony and that the defendant was the same person convicted of that felony. State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534. There are various methods available to prove that the defendant is the same person convicted of the prior felony offense, such as testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record. State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322.
Here, the defendant's fingerprints matched the fingerprints on the arrest registers in the two prior convictions. Along with the arrest register in those cases, the State introduced the bill of information, the guilty plea, and the docket master in each of those cases. In the 1990 possession of stolen property conviction, the arrest register submitted had the same magistrate number, address for the defendant, date of offense, description of the stolen van, and the same offense as the submitted bill of information. That same bill had the same case number and same offense as the guilty plea. The arrest register had the same folder number, magistrate number, date of birth and listed the same offense as the docket master. In the 1994 cocaine conviction, the bill of information and the arrest register had the same date of offense, the same offense and the same address for the defendant. The arrest register and the guilty plea had the same offense. The bill of information and the docket master had the same case number, the same magistrate number, the same date of birth, the same folder number, and the same offense. The State proved that the defendant was the man convicted of the earlier offenses.
The defendant argues he was denied his right against self-incrimination at the multiple bill hearing. However, the defendant did not plead guilty to the multiple bill.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR EIGHT:
The defendant argues the combination of error rendered the trial unfair.
There were no errors.
This assignment is without merit.
For the foregoing reasons, we affirm the defendant's conviction, vacate the sentence and remand for re-sentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.