823 So.2d 987 (2002)
STATE of Louisiana
v.
Robert R. HARRY, Jr. and Young Lee.
No. 2001-KA-2336.
Court of Appeal of Louisiana, Fourth Circuit.
June 26, 2002.
Rehearing Denied July 31, 2002.
*990 Harry F. Connick, District Attorney of Orleans Parish, Julie C. Tizzard, Assistant District Attorney of Orleans Parish, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant (Young Lee).
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant (Robert R. Harry, Jr.).
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY).
PATRICIA RIVET MURRAY, Judge.
Young Lee was charged with possession and distribution of cocaine, and Robert Harry was charged with distribution of cocaine, all violations of La. R.S. 40:967.[1] At arraignment, they both entered pleas of not guilty. After trial, on March 30, 2000, a twelve-member jury found them both guilty as charged. Ms. Lee was sentenced to serve concurrently three years on the possession charge and five years on the distribution charge. Although Mr. Harry originally was sentenced to five years, the state filed a multiple bill. The trial court vacated his original sentence, found him to be a second offender, and re-sentenced him to seven and one-half years. Mr. Harry, Ms. Lee, and the state appeal.

FACTS
On December 12, 1999, Detective Eugene Landry was engaged in an undercover narcotics investigation in a target area in which a lot of underground drug traffic was suspected. Wired with a transmitting device, monitored by a surveillance officer, and equipped with marked money,[2] Detective Landry drove to the target areathe 6000 block of Chef Menteur Highway in New Orleans. At about 8:45 p.m., he parked his vehicle and went for a walk through the parking lot of a motel in that area. He was approached by an Asian female, later identified to be Ms. Lee, whose motel room was ajar. She asked him what he was looking for, and he replied that a white woman usually "took care of him." Ms. Lee told him she could "take care of him." He replied that he usually got "a little fix, contraband, drugs." She stated that she could make a call and have some contraband delivered. He then handed her sixty dollars in marked bills, and she placed a phone call. Fifteen minutes later, a blue Chevrolet Camaro drove up, and Mr. Harry came into the room. Ms. Lee gave Mr. Harry twenty-five dollars of the marked money, and he gave her three rocks of crack cocaine. Ms. Lee then gave two rocks to Detective Landry, and she started smoking cocaine in a crack pipe.
Watching and listening from a distance of fifty feet, Detective Nicole Gouch, the surveillance officer, observed Detective *991 Landry go into the motel room. She also was able to discern Ms. Lee's dress. Detective Gouch then observed Mr. Harry[3] drive up in the blue Camaro. When Detective Landry gave her a secret signal, Detective Gouch radioed the takedown team. The takedown team, which Detective Gouch saw arrive, was comprised of Detectives Jake Schnapp and Christian Hart. The takedown team made a dynamic entry into the motel room. When they burst into the room, they found Ms. Lee in possession of the crack pipe. They also found thirty-five dollars of the marked money in her purse. Officer Michael Hamilton followed the blue Camaro and arrested Mr. Harry at a local gas station. He was in possession of twenty-five dollars of the marked money.[4] The parties stipulated that the three rocks were cocaine.

ERRORS PATENT
We have reviewed the record for errors patent and find none.[5]

ASSIGNMENT OF ERROR ONE (MS. LEE AND MR. HARRY)
Both Ms. Lee and Mr. Harry argue that they have been deprived of their right to an appeal by the unavailability of complete trial and sentencing transcripts. La. Const. Art. I, § 19 guarantees all defendants a right to appeal "based upon a complete record of all evidence upon which the judgment is based.[6]"
Recently, in State v. Frank, 99-05 (La.4/16/01), 803 So.2d 1, the Louisiana Supreme Court enunciated a three-part standard for reviewing incomplete record claims. First, "[m]aterial omissions from the transcript of the proceedings at trial bearing on the merits of an appeal will require reversal." 99-05 at pp. 20-21, 803 So.2d at 19-20 (citing State v. Robinson, 387 So.2d 1143 (La.1980)) (reversing given that testimony of a state and defense expert witness was missing); State v. Ford, 338 So.2d 107 (La.1976)(finding omissions material given that substantial portions of the record were missing, including the testimony of four State witnesses, voir dire examination of prospective jurors, and the prosecutor's opening statements); see also State v. Bright, XXXX-XXXX (La.App. 4 Cir. 2/6/02), 809 So.2d 1112, 1117 (finding record inadequate given "[t]he cumulative effect of the missing portions of testimony of the defendant and other material witnesses, and the frequency of `inaudible' and `spelled phonetically' in the transcript"); State v. Diggs, 93-0324 (La.App. *992 4 Cir. 6/29/95), 657 So.2d 1104 (citing Ford, supra, and finding the unavailability of an officer's complete testimony necessitated a new trial since it could not be determined whether the missing testimony was substantial or inconsequential). Second, "inconsequential omissions or slight inaccuracies do not require reversal." Frank, supra (citing State v. Goodbier, 367 So.2d 356, 357 (La.1979)(declining to reverse when record did not include transcript of voir dire examination and court reporter's affidavit indicated that no objections were made by the attorneys during voir dire)); see also State v. Lyons, 597 So.2d 593 (La.App. 4th Cir.1992)(declining to reverse when record did not include some of the jury charges, transcript of voir dire, impaneling of jury or opening statement). Third, and "[f]inally, a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts." Frank, supra (citing State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773).
Applying that standard to the instant case, we find it necessary to divide the arguments into trial transcript and sentencing transcript omissions. As to the trial transcript, it contains numerous references to "inaudible" statements. Although Mr. Harry and Ms. Lee contend that the trial transcript is riddled with such "inaudible" references, the state counters that the inaudible words do not distort the testimony. We agree.
The trial transcript includes a complete, coherent transcription of the trial, including the state's four witnesses, the prosecutor's closing argument, and the defense's objections thereto. Our reading of the trial transcript reveals that only short phrases, statements, series of words, or single words are referenced as "inaudible." As a whole, however, the trial transcript is coherent and understandable. We thus conclude that the trial transcript before us falls within the second Frank category of "inconsequential omissions or slight inaccuracies," which do not require reversal but rather is adequate for appellate review. Although Mr. Harry also points out in his reply brief that "an entire objection, bench conference, and ruling" are missing, he fails to argue how these alleged omissions prejudice his appeal. As in Lyons, supra, we conclude that "considering the overwhelming evidence of defendant[s]'s guilt" these missing portions of the trial transcript are inconsequential and do not warrant a reversal of their convictions. 597 So.2d at 599.
Insofar as to the missing sentencing transcripts are concerned, we find the final Frank category controlling, i.e., failure to establish prejudice from omission. As to Ms. Lee, she makes no specific argument regarding her sentence other than the fact that the sentencing transcript is missing. Given her failure to establish any prejudice, we find her argument unpersuasive. As to Mr. Harry, two of his three sentencing transcripts are missing. The first transcript recorded his original sentencing, which has since been vacated; that transcript is thus no longer relevant. The second recorded his multiple bill conviction, which he does not specifically question on appeal. The third recorded his resentencing as a multiple offender; that significant sentencing transcript is in the record. Contrary to Mr. Harry's contention, we thus find a remand for re-sentencing is not required.

ASSIGNMENT OF ERROR TWO (MS. LEE)
Ms. Lee argues the evidence was insufficient to support a conviction for distribution of cocaine because the evidence only shows that she bought the cocaine *993 for joint use and possession with Detective Landry. The issue is whether the evidence presented at trial to convict her of distributing cocaine in violation of La. R.S. 40:967, when viewed under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is sufficient to prove that she distributed the cocaine. Under Jackson, supra, the standard of appellate review for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Credibility determinations are within the discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
By statute, the term "distribute" is defined as "to deliver a controlled dangerous substance ... by physical delivery." La. R.S. 40:961(14)(emphasis supplied). "Delivery" is also statutorily defined as "the transfer of a controlled dangerous substance whether or not there exists an agency relationship." La. R.S. 40:961(10). "Delivery" has been jurisprudentially defined as transferring possession or control. State v. Parker, 627 So.2d 210, 212 (La. App. 4 Cir.1993)(citing State v. Martin, 310 So.2d 544, 546 (La.1975); State v. Simon, 607 So.2d 793 (La.App. 1st Cir. 1992)).
A defendant may be guilty of distribution as a principal if he or she "aids and abets in the distribution or indirectly counsels or procures another to distribute the controlled dangerous substance." Parker, 627 So.2d at 212 (citing State v. Parker, 595 So.2d 765 (La.App. 4th Cir. 1992).) La. R.S. 14:24 provides for liability as a principal, stating that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals." To support a defendant's conviction as a principal, the state is required to establish that the defendant had the requisite mental state for the crime. Parker, 627 So.2d 210, 212 (citing State v. Brooks, 505 So.2d 714 (La.1987); State v. Spotville, 583 So.2d 602 (La.App. 4th Cir. 1991)). Distribution requires proof of only general criminal intent, which may be established simply by proving voluntary distribution. Id. (citing State v. Chatman, 599 So.2d 335 (La.App. 1st Cir.1992)).
Ms. Lee argues that her distribution conviction must be reversed given that Detective Landry initiated the plan to acquire drugs for them before sex. She argues that the evidence, at best, showed she purchased cocaine at the officer's direction for their joint use and that there was no evidence that she sold or distributed cocaine, as she clearly obtained the cocaine to use it. Lastly, she argues that the state failed to prove any relationship between Mr. Harry and Ms. Lee other than seller and customer. To further support her argument, Ms. Lee poses a hypothetical; to wit: suppose Detective Landry was hungry and wanted pizza before sex, and she fulfilled his hunger by ordering a pizza. When the pizza deliveryman arrives, she paid him for the pizza. She argues that this does not make her an employee or an agent of the pizza place. By analogy, she argues her relationship with Mr. Harry was the same as her relationship to the hypothetical pizza deliveryman.
Ms. Lee's attempt to portray her role as an innocent customer placing a phone order for an innocent itempizzais factually innovative, but legally incorrect. Ms. Lee was an active participant in the sale of contraband. She called the seller, Mr. *994 Harry, who arrived at the motel within minutes with the cocaine. She then procured the cocaine and gave most of it to Detective Landry. That Ms. Lee lacked an agency relationship with Mr. Harry is irrelevant. As noted, the Legislature defined "delivery" in this context to include the transfer of contraband "whether or not there exists an agency relationship." La. R.S. 40:961(10).
Our finding is supported by the jurisprudence addressing the issue of a principal's liability for distribution. Although in Parker, supra, we reversed the defendant's conviction based on insufficiency of the evidence, we extensively reviewed the line of reported cases involving principals to a distribution of contraband offense. In so doing, we contrasted the role of the defendant in Parker, whose role was limited to examining the cocaine after the deal was consummated,[7] to the majority of the reported cases in which "the principal has played [a] much more active role in the planning and orchestrating the sale." 627 So.2d at 213. Moreover, we stressed that, unlike in the majority of cases, the defendant in Parker "was not involved in locating the seller or the buyer, or in introducing them, or in assisting them in the transaction, or negotiating the price or quantity." Id.[8] Ms. Lee, in contrast, falls squarely within the scenario presented in the majority of cases. As discussed above, she actively participated in planning and orchestrating the sale; particularly, her role included: initiating the sale by calling for Mr. Harry, taking Detective Landry's money, purchasing the cocaine from Mr. Harry, and handing most of it to Detective Landry. Her argument that she was merely "jointly using" the cocaine is without merit. Examining the evidence in the light most favorable to the prosecution, the state clearly proved beyond a reasonable doubt that Ms. Lee aided or abetted in the distribution or indirectly counseled or procured Mr. Harry *995 to distribute the cocaine to Detective Landry. In sum, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Ms. Lee was a principal in the distribution of cocaine.
Ms. Lee further argues that she was entrapped or induced into arranging the sale of narcotics to Detective Landry. "Entrapment" is an affirmative defense that applies when a law enforcement official originates the idea of the crime and induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. The defendant claiming entrapment must prove the defense by a preponderance of the evidence. State v. Brand, 520 So.2d 114, 117 (La.1988); State v. Smith, 97-2221 (La.App. 4 Cir. 4/7/99), 734 So.2d 826, 831, writ denied, 99-1128 (La.10/1/99), 747 So.2d 1138. To adequately support an entrapment defense, the defendant must present exculpatory circumstances that defeat culpability even though the state proved all essential elements of the crime beyond a reasonable doubt. State v. Byrd, 568 So.2d 554 (La.1990); State v. Cheatwood, 458 So.2d 907 (La.1984); 584 So.2d 724, State v. St. Amant, 584 So.2d 724 (La.App. 4 Cir.1991). The reviewing court must consider the defendant's predisposition to commit the crime as well as the conduct of the police officers involved. State v. Batiste, 363 So.2d 639 (La.1978).
In the instant case, Detective Landry testified that Ms. Lee offered to buy cocaine immediately upon his statement that he usually "got a fix." Ms. Lee thus failed to show, by a preponderance of the evidence, that she was induced to commit an offense to which she was not predisposed. This assignment is without merit.

ASSIGNMENT OF ERROR THREE (MS. LEE)
Ms. Lee argues that the state engaged in improper closing and rebuttal argument. The scope of closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant." La.C.Cr.P. art. 774. However, a prosecutor retains "considerable latitude" when making closing arguments. State v. Taylor, 93-2201, p. 19 (La.2/28/96), 669 So.2d 364, 374. Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Even if the prosecutor exceeds the broad bounds of proper argument, an appellate court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. Id.; State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397, writ denied, XXXX-XXXX (La.12/18/00), 775 So.2d 1078. Even where the prosecutor's statements are improper, credit should be accorded to the good sense and fairmindedness of the jurors who have heard the evidence. State v. Snyder, 98-1078, p. 18 (La.4/14/99), 750 So.2d 832, 846.
In this case, the trial transcript reflects that in closing argument the prosecutor referred to Ms. Lee as "the same woman that might be approaching your children" and "this is the same woman that might approach someone else that you care about." Defense objected. The trial court overruled the objection. Although we agree with Ms. Lee's contention that this was improper argument, we cannot say that this argument influenced the jury and contributed to the verdict. Indeed, as the state argues, in State v. Sanders, 648 So.2d 1272 (La.1994), the Louisiana Supreme *996 Court held that similar statements were improper argument, yet found this insufficient to support reversal because it did not contribute to the verdict.[9]
Ms. Lee further contends that the prosecutor's argument that "you've heard absolutely nothing to refute any of these events" was meant to reference Ms. Lee's failure to testify and thus violated La. C.Cr.P. art. 770(3)[10] and impinged upon her right against self-incrimination. Addressing this issue, the Louisiana Supreme Court in State v. Mitchell, XXXX-XXXX, p. 5 (La.2/21/01), 779 So.2d 698, 702, listed "`[s]tatements in argument to the effect that there is no refuting evidence'" as illustrative of a permissible indirect reference not intended to focus on a defendant's failure to testify. The Supreme Court also stated that such a statement is "permissible, though not favored." XXXX-XXXX at p. 5, 779 So.2d at 701. Although the prosecutor in this case, as Ms. Lee emphasizes, used the modifier "absolutely," we find the statement at issue falls squarely within the category of arguing that there is "no refuting evidence," classified in Mitchell as permissive. We thus reject this argument.
Ms. Lee further argues that the prosecutor was sarcastic to defense counsel. The record reveals no outrageous behavior. She still further argues that the cumulative effect of the prosecutor's improper conduct deprived her of a fair trial. We find that argument unpersuasive. See State v. Bridgewater, XXXX-XXXX (La.1/15/02), ___ So.2d ___, 2002 WL 47169 (rejecting similar cumulative error argument and citing Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987) for proposition that "twenty times zero equals zero").

STATE'S APPEAL
In its single assignment of error, the state argues that that the trial court's sentencing of Mr. Harry, a second offender with a prior crime of violence, to seven and one-half years was an improper departure from the mandatory minimum sentence of fifteen years. We agree.
At re-sentencing, it was established that Mr. Harry was eighteen years old, had one prior conviction for aggravated battery for which he received probation, and had a drug addiction. Citing State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, and State v. Dorthey, 623 So.2d 1276 (La.1993), Mr. Harry argued to the trial court that his situation is identical to that of the defendant in Burns and that the mandatory minimum sentenced was excessive.[11]
Finding merit to Mr. Harry's argument, the trial court found that because Mr. Harry had never been to jail and was so young, a fifteen years sentence would have subjected him to unnecessary pain and suffering. Particularly, the trial judge gave the following reasons:

*997 [T]he Court having considered the evidence, having considered the fact Mr. Harry is 18 years of age, (IA) that he has but one prior conviction. Let the Record reflect that the Court has received a letter (IA) Mr. Harry (IA) which was filed into the Record. We rule that when he plead [sic] guilty to the first offense for which he was given community service, this will be Mr. Harry's first time in jail. The defendant served 15 years (IA) for a first time offender. The Court has never had any experience with (IA). The Court believes that (IA) pain and suffering too severe for an 18-year old. I'm going to hold (IA) Mr. Harry pursuant to the original jury verdict, where he was found guilty of distribution (IA). The Court believes that it's appropriate to serve seven and a half years in Department of Corrects with credit for time served.
As noted, we find merit to the state's argument that the trial court's departure from the mandatory minimum sentence was error. The minimum sentences imposed by the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. Id. To rebut the presumption, the defendant must clearly and convincingly show that "`[he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.'" State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343 (quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529)(Plotkin, J., concurring).
Declining to extend Burns, supra, this court in State v. Finch, 97-2060 (La. App. 4 Cir. 2/24/99), 730 So.2d 1020, commented that "[w]here a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness." 97-2060 at p. 13, 730 So.2d at 1027. Downward departures from the mandatory minimum sentence under the Habitual Offender Law should occur only in "rare situations." State v. Warren, 99-0557, p. 8 (La.App. 4 Cir. 9/8/99), 742 So.2d 722, 727. This is not one of them.

DECREE
For the foregoing reasons, as to Mr. Harry, we affirm his conviction and habitual offender adjudication, vacate his sentence, and remand for re-sentencing in accordance with the views expressed herein. As to Ms. Lee, we affirm both her conviction and sentence.
AFFIRMED IN PART, REVERSED IN PART.
JONES, J., concurs in part and dissents in part.
*998 JONES, J., concurs in part and dissents in part.
I agree with the majority that the conviction and sentence of Young Lee should be affirmed, and that the conviction of Robert R. Harry, Jr., should be affirmed. I do not agree that Harry's sentence should be vacated and the matter remanded for resentencing.
The district attorney of Orleans Parish, and his policy of seeking the maximum penalty upon conviction appears to result in a policy directed at poor people only. Courts, in my opinion, are accomplices to this apparently misguided policy when we overrule the sound wisdom of the district judge, and require a fifteen year prison sentence for an eighteen year old, second offender. This sentence is not only harsh but also cruel, and clearly resulting in the needless imposition of pain. Thus, I must dissent.
NOTES
[1] Mr. Harry was also charged with possession of cocaine with intent to distribute, La. R.S. 40:967, and possession of marijuana with intent to distribute, La. R.S. 40:966. As discussed elsewhere, the state dismissed those two counts before trial.
[2] The police photocopied the bills so as to be able to identify them.
[3] The audiotape recorded from Detective Landry's wire was played to the jury
[4] Although other contraband was found in his vehicle, Mr. Harry's motion to suppress that evidence found in the warrantless search of his vehicle was granted. After this court denied the state's writ application from that ruling, XXXX-XXXX (La.App. 4 Cir. 2/18/2000), unpub, and the trial court denied the state's motion to sever the two counts against Mr. Harry based on that evidence, the state dismissed those two counts.
[5] Although both Ms. Lee and Mr. Harry were sentenced without the denial of benefits as required by La.R.S. 40:967, we no longer recognize this as a patent sentencing error since by statute, La. R.S. 15:301.1, this correction is automatic. See State v. State v. Williams, 00-1725 (La.11/29/01), 800 So.2d 790 (construing La. R.S. 15:301. 1as self-activating); State v. Barnes, 2001-2318 (La. App 4 Cir. 3/27/02), 816 So.2d 881.
[6] See La.C.Cr.P. art. 843 (requiring that in all felony cases the recording of "all the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel"); La. R.S. 13:961(C)(providing that in criminal cases tried in district court the court reporter "shall record all portions of the proceedings required by law or the court.")
[7] In Parker, a third party, Albert Jones, agreed to sell two rocks of cocaine to undercover Agent Collins for fifty dollars. The evidence, as reviewed by this court, indicated that defendant Parker's participation consisted of merely asking Albert Jones if he could examine the cocaine, looking at it, then saying to Collins "It looks okay."
[8] The line of reported cases finding principal liability include the following: State v. Goins, 568 So.2d 231 (La.App. 3 Cir.1990) (defendant totally orchestrated the narcotics purchase by initiating the drug transaction, and deciding the time and place where the parties would later meet to complete the drug transaction and drove the state witness to two locations for the specific purpose of "finding cocaine to sell him"); State v. Parker, 595 So.2d 765 (La.App. 4 Cir.1992)(defendant flagged down an undercover officer and informed the officer that his brother-in-law had crack cocaine for sale, defendant entered the officer's vehicle, directed the officer to a street corner, and arranged for the purchase by the undercover officer of two rocks of cocaine for twenty dollars); State v. Fontenot, 524 So.2d 867 (La.App. 3 Cir.1988)(defendant arranged for a sale of marijuana between an associate and an undercover officer, accompanied both men outside a bar and was present when the transaction occurred, and after the exchange, defendant commented about the high quality of marijuana that the officer had purchased); State v. Cook, 460 So.2d 1075 (La.App. 2 Cir.1984)(instructions given by the defendant to the officer to drive one block to a street where a male would be waiting to hand the man the money and to receive from him the marijuana, constituted aiding and abetting in the commission of the offense of distribution of marijuana); State v. Rexrode, 536 So.2d 671, 676 (La.App. 3 Cir.1988)(undercover investigator asked defendant if he had narcotics for sale, and defendant stated that he did not, but instructed his roommate and codefendant to inquire about the availability of marijuana at a nearby lounge; the confederate did so and was able to produce "a willing seller." Defendant was a principal to the distribution of marijuana in that he "aided the illegal transfer of marijuana by indirectly procuring the party who actually consumated the sale.")
[9] In Sanders, supra, the prosecutor told the jury that "they should think of themselves as crime victims and take a stand against crime." 648 So.2d at 1285.
[10] La.C.Cr.P. art. 770(3) provides that "[u]pon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: ... (3) the failure of the defendant to testify in his own defense."
[11] In State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, the defendant's life sentence as a fourth felony offender was vacated because this Court was unable to conclude that the life sentence was not constitutionally excessive as applied to that particular defendant. The defendant in Burns was convicted of the underlying offense of distributing a single rock of crack cocaine. He had two prior convictions for possession of cocaine and one conviction for possession of stolen property. At trial, the defendant testified that he was addicted to cocaine. This Court found that, based on the evidence in the record, the defendant was driven by his cocaine addiction to sell drugs to support his habit, and it considered the defendant's age of twenty-five, his family background, his drug addiction, the fact that all of the felonies were non-violent and the fact that there was no evidence he had ever possessed a dangerous weapon. After considering all of the circumstances of the case, this Court vacated the life sentence, reasoning, "[w]e are unable to conclude that this life sentence is not excessive under the constitutional standard." Burns, 97-1553, p. 11, 723 So.2d at 1020.