860 So.2d 174 (2003)
STATE of Louisiana
v.
Anthony STAGGERS.
No. 03-KA-655.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*175 John M. Crum, District Attorney, Rodney A. Brignac, Assistant District Attorney, Laplace, LA, for Plaintiff-Appellee.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and WALTER J. ROTHSCHILD.
EDWARD A. DUFRESNE, JR., Chief Judge.
On January 14, 1998, the grand jury for St. John the Baptist Parish returned an indictment charging defendant, Anthony Staggers, with six counts of distribution of cocaine in violation of LSA-R.S. 40:967(A). At the arraignment, defendant pled not guilty. Thereafter, the state amended the indictment to allege defendant was a principal to the distribution of cocaine on counts one, two, four, five and six. Count three of the original indictment was not amended. Defendant was rearraigned on the amended charges and again pled not guilty. The matter proceeded to trial on December 8, 1999. After considering the evidence presented, the twelve-person jury found him guilty as charged on counts one, two, four, five and six and not guilty on count three.
The state subsequently filed a multiple offender bill of information on December *176 14, 1999, on each of the five counts, alleging defendant to be a second felony offender based on a 1992 conviction for distribution of cocaine. Defendant filed an objection to the multiple bill challenging the validity of the predicate plea. The objection was argued on November 15, 2000, at which time defendant admitted to his identity as being the same person who committed the predicate offense but maintained the Boykin was defective. The trial court took the matter under advisement and subsequently denied defendant's objection to the multiple bill on November 27, 2000.
On December 13, 2000, the trial judge sentenced defendant as a second felony offender to fifteen years to run concurrently on each of the five counts. Defendant now appeals.

FACTS
In November and December 1997, Agent Kelly Gonzales worked undercover with informant, Carol Ougel, in a narcotics investigation of Alice Bailey and defendant. Agent Gonzales conducted five drug transactions with Bailey during which she purchased crack cocaine from Bailey in $40 and $50 amounts. The drug transactions were recorded with audio and video equipment in Agent Gonzales' vehicle.
The first drug buy was November 14, 1997. Agent Gonzales, accompanied by Ougel, approached Bailey and gave her $50 for the purchase of crack cocaine. Bailey was unable to provide the cocaine immediately so Agent Gonzales parked the car and waited. Agent Gonzales and Ougel saw a red Suzuki pull into Bailey's driveway driven by a black male, later identified as defendant. Ougel testified she saw a drug transaction between Bailey and defendant after which defendant left the premises. Bailey then brought three rocks of crack cocaine to Agent Gonzales.
The second drug buy occurred on November 25, 1997. Agent Gonzales and Ougel again went to Bailey's residence. Agent Gonzales gave Bailey $40 for cocaine. Bailey did not have the cocaine and had to make a phone call to "Big Man," which was an alias for defendant. Agent Gonzales parked her car by the neighbor's house to wait. Thereafter, defendant arrived at Bailey's home in a maroon Grand Prix. Ougel again saw a hand-to-hand transaction between Bailey and defendant. Defendant left the property after which Bailey gave Agent Gonzales the cocaine.
The third transaction occurred on November 26, 1997, and was similar to the first two. Agent Gonzales and Ougel arrived at Bailey's residence to purchase cocaine. Agent Gonzales gave Bailey $40 for the cocaine and then rode around the block. She saw a maroon vehicle driven by defendant approach Bailey's residence and then leave. Agent Gonzales subsequently went to Bailey's residence at which time she received the cocaine.
The fourth and fifth drug buys were conducted solely by Agent Gonzales without Ougel. The fourth transaction was made on December 10, 1997. Agent Gonzales gave Bailey $50 for cocaine and then left the area entirely for approximately 20 minutes. She returned to Bailey's residence and picked up three rocks of crack cocaine. Sergeant Troy Hidalgo was monitoring the transaction and stayed in the area after Agent Gonzales left. Between the time Agent Gonzales left the area and returned, Sergeant Hidalgo observed a maroon Grand Prix driven by defendant pull into Bailey's driveway. He further saw Bailey run out to defendant's car and purchase cocaine.
The fifth drug buy was made on December 17, 1997. Agent Gonzales gave *177 Bailey $40 for cocaine and left the area. Upon her return, Agent Gonzales received cocaine from Bailey. On this fifth transaction, separate surveillance was set up on Bailey's residence and defendant's residence. Shortly after Agent Gonzales initially arrived at Bailey's residence, defendant was seen leaving his residence. Defendant was then seen arriving at and departing from Bailey's residence. Sergeant Hidalgo testified that Agent Gonzales purchased the cocaine from Bailey after defendant had left the area.
Bailey testified as an unwilling witness at trial. She stated she was involved in several drug transactions with Agent Gonzales. She explained that she called defendant each time to bring her the cocaine and defendant complied.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant challenges the sufficiency of the evidence used to convict him of five counts of distribution of cocaine. Defendant contends the state failed to present any evidence that he acted as a principal to the drug transactions between the undercover agent and Alice Bailey. He denies he was present at Bailey's residence during the drug transactions and points out the undercover agent testified she had no dealings with defendant. Defendant additionally points out that he is not on the videotape of the drug transactions at issue.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Distribution of cocaine is defined in LSA-R.S. 40:967(A)(1) which provides that it is unlawful for any person to knowingly or intentionally distribute a controlled dangerous substance classified in Schedule II. Cocaine is classified in Schedule II as a controlled substance. LSA-R.S. 40:964(A)(4). The term "distribute" is defined as "to deliver a controlled dangerous substance ... by physical delivery." LSA-R.S. 40:961(14). "Delivery" has been jurisprudentially defined as transferring possession or control. State v. Harry, 01-2336 (La.App. 4 Cir.6/26/02), 823 So.2d 987, 993, writs denied, 02-2029 (La.2/7/03), 836 So.2d 96 and 02-2299 (La.2/7/03), 836 So.2d 97.
A defendant may be guilty of distribution as a principal if he "aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance such as cocaine." State v. Bartley, 00-1370 (La.App. 5 Cir.2/14/01), 782 So.2d 29, 32-33, writ denied, 01-717 (La.2/22/02), 809 So.2d 981.
To support a defendant's conviction as a principal, the state must show that the defendant had the requisite mental state for the crime. State v. Saylor, 01-451 (La.App. 5 Cir.11/27/01), 802 So.2d 937, 941, writ denied, 01-3406 (La.10/4/02), 826 So.2d 1122. Distribution of cocaine is a general intent crime which can be established simply by proving voluntary distribution. State v. Banks, 307 So.2d 594, 597 (La.1975); State v. Harry, supra.
In challenging the sufficiency of the evidence, defendant relies on the fact that he is not seen on the videotape distributing drugs to Agent Gonzales. He contends the videotape only shows Bailey as the seller of the cocaine and Agent Gonzales as the buyer of the cocaine. Defendant argues his name was never mentioned on the *178 videotape during any of the drug transactions. He further relies on Agent Gonzales' testimony that she had no dealings with defendant while negotiating the cocaine purchases from Bailey.
Defendant is correct in his assertions that he was never captured on videotape and that Agent Gonzales readily admitted she had absolutely no dealings with defendant during any of the drug buys. However, defendant's argument ignores all the other evidence presented.
Under the charge of a principal to distribution, the state had to show defendant aided and abetted in the distribution. Agent Gonzales testified that Bailey was unable to sell cocaine immediately on each of the drug buys explaining that she had to make a phone call. Agent Gonzales stated that, on each of the first three drug buys, on November 14, 25, and 26, 1997, a black male, later identified as "Big Man" or "Low Down," appeared at Bailey's residence after Bailey indicated she had to make a phone call. Agent Gonzales explained that the black male and Bailey had a transaction after which the black male left and Bailey gave Agent Gonzales the cocaine.
Informant Carol Ougel testified that, on the three occasions she accompanied Agent Gonzales on the drug buy, November 14, 25 and 26, 1997, she saw a drug transaction between defendant, also known as "Big Man," and Bailey after which Bailey delivered the cocaine to Agent Gonzales.
On the fourth and fifth drug buys on December 10 and 17, 1997, Agent Gonzales left the area and did not see what transpired at Bailey's residence before Bailey actually gave her the cocaine. However, Sergeant Hidalgo monitored all the drug transactions.
On the first transaction of November 14, 1997, Sergeant Hidalgo testified that, through the audio equipment, he heard Bailey indicate she had to get the cocaine from "Big Man." From his prior professional dealings, Sergeant Hidalgo was aware "Big Man" was an alias for defendant. Sergeant Hidalgo testified he saw defendant leaving the area in a car registered to defendant's sister, who lives next door to defendant, after the transaction. Hidalgo also testified that, on November 25 and 26, 1997, he saw defendant arrive and leave the area during the time of the transaction between Bailey and Agent Gonzales.
On December 10 and 17, 1997, additional surveillance was set up. Sergeant Hidalgo testified he again saw defendant at Bailey's residence at the time of the undercover drug buy. On December 10, Hidalgo testified he saw Bailey come to defendant's car and saw Bailey purchase cocaine from defendant. On December 17, several deputies testified they observed defendant leave his home, travel to Bailey's residence, and return within fifteen to twenty minutes. Sergeant Hidalgo again testified he saw defendant arrive at Bailey's residence and saw the transaction between defendant and Bailey.
Additionally, Bailey herself testified that she was involved in drug transactions with Agent Gonzales. She testified that, on each of the drug transactions, she called defendant, whose alias was "Big Man" or "Low Down," to bring her the drugs and defendant delivered the drugs to her.
In the present case, the evidence shows that for all five drug transactions Bailey called defendant at which time defendant came to her residence and delivered the drugs. Bailey then turned around and immediately gave the drugs to Agent Gonzales. This evidence clearly shows that defendant assisted in the transactions.
*179 Based on the foregoing discussion, we find that the evidence was sufficient to support the jury's determination that defendant was guilty as a principal to the five counts of distribution of cocaine. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, defendant challenges the sentence imposed by the trial judge. He first contends, without any type of argument, that his fifteen-year sentence on each conviction is excessive considering the state's evidence. In the present case, we have found a reversible error patent in the multiple offender proceedings requiring this court to vacate defendant's enhanced sentences. Therefore, it is unnecessary to address defendant's claim of excessiveness at this time.
In this assignment, defendant also argues that his sentence is invalid because the trial court failed to advise him of the time delays for appealing the conviction and sentence and the time delays for filing an application for post-conviction relief. While it is true defendant was not advised of the five-day time delay for filing an appeal under LSA-C.Cr.P. art. 914, he successfully obtained an out-of-time appeal and, therefore, the error is moot. See, State v. Chess, 00-163 (La.App. 5 Cir. 6/27/00), 762 So.2d 1279, 1284-1285. While it is likewise true defendant was not initially advised of the two-year prescriptive period for filing an application for post-conviction relief under LSA-C.Cr.P. art. 930.8, he timely filed an application for post-conviction relief. Thus, this alleged error is also moot. Additionally, in its judgment pertaining to defendant's application for post-conviction relief, the trial court advised defendant of the appropriate prescriptive period under LSA-C.Cr.P. art. 930.8.

ERROR PATENT DISCUSSION
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review reveals that defendant was not advised of his rights prior to stipulating to his identity with regards to the multiple offender bill of information as required by LSA-R.S. 15:529.1(D)(1)(a). LSA-R.S. 15:529.1 requires the trial court to advise defendant of the allegations contained in the information, his right to a hearing and his right to remain silent. State v. Dearmas, 606 So.2d 567, 569 (La. App. 5 Cir.1992), overruled on other grounds in State v. Davis, 01-123 (La.App. 5 Cir.7/30/01), 792 So.2d 126, 131. The failure of the trial court to advise the defendant of his right to a trial and to remain silent is harmless error when the multiple offender status is established by competent evidence offered by the state at a hearing, rather than by the admission of the defendant. State v. Dearmas, supra.
In the present case, the state filed a multiple offender bill of information referring to all five of defendant's December 8, 1999 convictions for distribution of cocaine. In the multiple bill, the state alleged defendant to be a second felony offender based on a prior 1992 conviction. Defendant filed an objection to the multiple bill on the basis of an alleged defective Boykin involving the predicate plea. A hearing was held on November 15, 2000, at which time the parties argued defendant's objection to the multiple bill.
During the multiple bill hearing, defense counsel stipulated to defendant's identity as being the same person who committed the predicate offense. The record does not indicate that defendant was advised of *180 his right to a hearing and right to remain silent in connection with the multiple bill as required by LSA-R.S. 15:529.1(D)(1)(a) prior to stipulating to his identity and the state offered no independent evidence of defendant's identity.
In order for a defendant to be found a multiple offender, the state is required to prove the existence of a prior felony and that the defendant is the same person who was convicted of the prior felony. State v. Davis, 02-387 (La.App. 5 Cir.9/30/02), 829 So.2d 554. Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. However, independent proof is required to show that the defendant is the same person identified in the records. State v. Walker, 01-348 (La.App. 5 Cir. 8/28/01), 795 So.2d 459, 463, writ denied, 01-2788 (La.10/4/02), 826 So.2d 1115.
Since the state did not independently prove defendant's identity, the failure of defendant to be advised of his right to remain silent at the multiple bill hearing is reversible error. State v. Walker, supra. As such, defendant's adjudication as a second felony offender and the enhanced sentences imposed pursuant to that finding must be vacated.
For the reasons set forth herein, we affirm defendant's convictions of distribution of cocaine. However, we vacate defendant's adjudication as a second felony offender and the enhanced sentences imposed pursuant to the multiple offender proceedings. The matter is remanded for further proceedings.
CONVICTION AFFIRMED, MULTIPLE OFFENDER SENTENCE VACATED, REMANDED FOR FURTHER PROCEEDINGS.